(Hamilton Co., O., Common Pleas, 1901.)

## CYRILL KEHM v. GERMAN MUTUAL INSURANCE COMPANY.

*Fire Insurance—Additional Insurance—Want of endorsement of consent not conclusive—*

(1.) An insurance company will be estopped from setting up a forfeiture on the ground that consent to "other insurance" was not actually endorsed on the policy, if notice thereof was given to the company or its authorized agent and no objection was made thereto.

*Agent's Authority—*

(2.) An insurance company cannot evade an estoppel by limiting its agent's authority by printed restrictions. It is liable for the acts of its agent to the extent that the company has permitted the agent to hold himself out, and which a prudent person, in good faith, under the circumstances would reasonably believe him to be authorized to do.

*Mutual Companies—*

(3.) By-laws of a mutual insurance company limiting the agent's powers or prescribing the manner or consent to "other insurance" may be waived, abrogated or abandoned.

*Condition subsequent—*

(4.) Refusal to comply with a clause as to notice of "other insurance" is a violation of a condition subsequent.

*Waiver and estoppel—*

Acts and conduct of the parties occurring subsequent to the delivery of a policy are applicable to the doctrine of waiver and estoppel, and may be raised by way of reply in an action at law.

*Reformation—Pleading—*

(6) Agreements, acts and conduct of the parties occurring prior to and contemporaneously with the delivery of the policy, and inconsistent with the terms thereof, are merged in the written contract and are available only in an equitable proceeding to reform the contract. Reformation may be set up in a reply, together with a cause of action for judgment, after the policy is reformed.

PFLEGER, J.

The plaintiff filed his petition on a mutual insurance policy, alleging that the defendant performed all the conditions on his part to be performed.

The defendant company answered, denying liability, on the grounds—

1. That the policy contained a provision that the same shall be void if there was other insurance during its running period without consent endorsed thereon by the secretary of the company.

2. That the by-laws, in addition, provided that no indemnity shall be allowed if double insurance exists without the consent of the board of directors and "re-marked" in the policy; that the plaintiff, sixteen days after the issuing of defendant's policy, insured in another company; that the defendant company had no knowledge thereof until after the fire that no consent was endorsed on the policy, and tendered back the premium note and the premium, deducting only for the sixteen days.

The plaintiff, in an amended reply, admitted the other insurance, and says:

1. That he never saw or had knowledge of such by-laws, and that the same was abandoned, abrogated and waived by the company.

2. That the company never before refused to pay losses on the ground that double insurance existed and had not been re-marked in the policy, and is, therefore, estopped to plead endorsement.

3. That the defendant's agent applied for $3,000 insurance; that $2,000 was allowed; that the plaintiff notified said agent that he would take out a policy for the additional $1,000; that he received said policy with that distinct understanding; that *"at and immediately after the delivery of the policy"* he notified the company that he would at once take out said additional $1,000; that the said company, by its authorized agent, consented thereto and neglected to endorse such consent, or to inform plaintiff that such consent was necessary, and that thereby defendant waived said provisions as to other insurance.

4. That the defendant company, after knowledge of the other insurance and after the fire, caused bids to be made for reconstruction, took other steps, and sent its agents for a settlement thereof, made no claims as to the other insurance clause, but insisted that plaintiff had set fire to his said building.

5. That the defendant did not tender the premium note and the premium until long after the bringing of this suit, whereby defendant waived the provision as to additional insurance.

The case was tried on the original pleadings and a verdict and judgment rendered in favor of the plaintiff, which was reversed by the circuit court, on the ground that the defendant should not have alleged performance of all the conditions, but should have plead the exception as to other insurance and the waiver; and on the ground that the pleadings admitted that the defendant had no knowledge of other insurance; that the same was not endorsed on the policy; that the agent had knowledge that the plaintiff merely intended to take other insurance, which he had a right to do, and that no waiver is claimed in the pleadings or shown in the evidence on the part of the company or the agent, and that if the agent had agreed

thereto it was not competent for him to do so.

And, lastly, that no fraud is alleged, and that the written contract could not be varied by the parol statements of the agent.

Separate motions (demurrers in nature) are filed to the allegations in the reply. The case was twice argued, and ably briefed by counsel on both sides. The question involved not only the substantive law of insurance applicable hereto, but also the necessary pleadings and the remedies. Many authorities, including those cited by counsel, were examined.

### CONSENT BY ENDORSEMENT.

In many of the states it has been held that a provision prohibiting a parol waiver by officers and agents is valid and enforceable (16 Ency. of Law, 951, note 4, 2nd ed.;also, in Smith v. Farmers Mutual Company, 19 Ohio St., 287; Frankfuerter v. Home, 10 Misc., N. Y., 159; Union Bank v. Sherman, 71 Fed. R., 473; Walsh v. Hartford, 73 N. Y., 5; Marvin v. Universal, 85 N. Y., 278; Cleaver v. Ins. Company, 65 Mich., 527). Such provisions in by-laws of a mutual company are binding on a policy holder (Stark Ins. Co. v. Hurd, 19 Ohio St., 149; Hall v. Mich. Ins. Co., 72 Mass., 169). Our Supreme Court has said, in Union Central Insurance Co. v. Hook, 62 Ohio St., 264, that the insured has made it impossible to modify the terms of the policy by verbal agreement or by writing, except as therein provided, in the absence of conduct estopping the company.

The general rule sanctioned by the weight of authority is, that the company and its authorized agent may waive, by parol, a condition in the policy as to other insurance, or be estopped to deny the same, notwithstanding a provision requiring an endorsement on or attached to the policy (see many authorities in 16 Ency. of Law, 2d. Ed., p. 950 and 951, and especially the following: Baldwin v. Citizens Ins. Co., 60 Hun., 389; Schammner v. State, 30 Oregon, 29; Dale v. Continental, 95 Tenn., 38; Dick v. Equitable, 92 Wis., 46; Cronin v. Ins. Co., 119 Mich., 74; 25 S. W. 796; 80 N. W. 1088;Mattocks v. Ins. Co., 74 Iowa, 233; Ins. Co., v. Earle, 33 Mich., 143; Kitchen v. Ins. Co., 23 N. W., 616; 57 Mich., 135; Ins. Co. v. Gallatin, 48 Wis., 36; Kahn v. Ins. Co., 34 Pac., Wyo .,1059; McElro v. British As. Co., 94 Fed., 790; Mutual v. Wood, 95 Va., 231; Ohio Farmers v. Burget, 17 C. C., 619; Ohio Farmers Ins. Co. v. Davidson, 37 Bull., 164; Joyce on Insurance, Sec. 556). Although this point was raised in the pleadings, it was not considered material in Sun Ins. Co. v. Clark, 53 Ohio St., 414. And this is true, although it is against a by-law of a mutual insurance company (Redstrake v. Cumberand, 44 N. J. Law, 294), because a by-law may be mutually waived (Hondeck v. Merchants, 102 Iowa, 303. And this is applicable to a standard policy (Wood v. Ins. Co., 149 N. Y., 382; 159 N. Y., 426). Restrictions by the company on its own powers are ineffectual (Dick v. Equitable, supra). It is not in the power of an insurance company to abolish the law of estoppel or waiver by such means (Firemen v. Norwood, 69 Fed. R., 71; Northern v. Grandview B. A. 101 Fed. R., 80 Neb.). Such provision in a policy has no greater sanctity than any other, and may itself be waived (Gandy v. Ins. Co., 52 S. C., 228) a well-considered case. The same is true of a clause requiring the authority of a board of directors and a written endorsement by the president. In this case the company was estopped from asserting the truth, because "the party was lulled to sleep by the assurance that the condition had been complied with, and that the indemnity was secure" (citing Judge Sharswood; Stoffer v. Ins. Co., 164 Pa., 204).

The tendency of the modern cases is to hold that if notice of the additional insurance be duly given to the company or its agents and no objection is made, the company will be estopped from insisting upon a forfeiture because the consent was not endorsed as literally required (May on Insurance, Section 370).

It seems to me; therefore, that as the main object of a literal endorsement of other insurance is to give notice to the company in order that it may exercise its privileges under the policy, any requirement of an actual endorsement by a designated officer, or after consent on the part of the board of directors, executed in a certain manner, is mere evidence of the fact of such notice or knowledge, to be acted upon, not by the insured, but by an affirmative consent on the part of the company. Such requirement is akin to the provisions in contracts limiting liability in the face of well-known principles of law to the contrary, and they should not be enforced except only to the extent that they are reasonable. If this were not so, as has been said, it would practically abolish the law of estoppel and waiver.

Our Supreme Court, in the case of Union Central Company v. Hook, 62 Ohio St., 256, held that such a provision would not be enforced in the face of such knowledge and acts as would estop the company from alleging them in defense. Where, therefore, it is alleged that a duly authorized agent of the company had knowledge of other insurance and consented thereto, prior to and after the de-

livery of the policy, the circumstances on the trial may well be such as to establish a case of estoppel or waiver. And this was evidently the view of the circuit court; otherwise it would not have remanded the case for a new trial.

### AGENT'S AUTHORITY.

The authorities on the question of the agent's authority to waive a clause of forfeiture or estop the company from claiming such, especially as to other insurance, are very conflicting. An insurance company will not be permitted to defeat a recovery on a policy issued by proving the existence of facts which, by the terms of the policy, would render it void, where, at the issuance of the policy, the company had full knowledge of such facts (see many cases cited in different states, in 16 Ency. of Law, p. 935, note 6). And even after the policy is issued and after forfeiture there seems to be no doubt that a general agent has power to waive any condition contained in the policy, by his knowledge of existing facts; not, however, for acts to be performed in the future (ditto, pp. 938, 942 and 943). So, a soliciting agent who is authorized to solicit, make out and forward applications for insurance and to deliver policies when executed and collect and transmit premiums, has power to estop the company by his acts and by notice given to him before the issuing of the policy, in the absence of evidence showing special limitations upon his powers known to the insured, or plainly to be inferred from the nature of his employment. But he has no such power after the delivery of the policy, if he is merely a soliciting agent, and especially not to waive future acts or defaults, because it is said that his authority ceases as soon as the contract is completed (ditto, pp. 943, 944 and 945).

A number of well considered cases may be found denying the authority of a soliciting agent, either before or after the issuing of the policy, to waive a condition contained therein (*Golden* v. *Northern Assurance Co.,* 46 Minn., 471). And in a note the reporter has classified those involving the "other insurance" clause by states, in *United Firemen* v. *Thomas* 27 C., C. A., 42.

*May on Insurance,* 1900 Edition, section 144, citing *Eames* v. *Home Ins. Co.,* 94 U. S., 621, summarizes the situation as follows: The earlier decisions hold that a company which is not known to the insured, although the insured looks to and relies upon the statements of the agent, may limit the responsibility of the acts of the agent to the simple receipt of the premium and the delivery of policy. To apply this doctrine in full force now would be a delusion and a snare for unsuspecting policy holders, leading to the grossest frauds, and of which the insurance companies would receive the benefits. The parties supposing themselves insured are the victims. "The tendency of the modern decisions in this country is steadily in the opposite direction." "The powers of the agent are, *prima facie,* co-extensive with the business entrusted to his care and will not be narrowed by limitations not communicated to the person with whom he deals."

If an agent advise the insured that certain matters need not be stated, and he, as a man of ordinary prudence and intelligence, relies on the agent's assurance, he will be protected (*May on Insurance, section* 144g). Our own Supreme Court has a number of times expressed itself on this subject. It was held in *Sun Ins. Co.* v. *Clark,* 53 Ohio St., 414, construing section 3463, Revised Statutes, which provides that in case two or more policies are in force, each shall contribute to the whole, not in proportion to the actual value of the property, but in proportion to the amount of the insurance mentioned in each policy in the absence of any change increasing the risk; that the taking of other or additional insurance does, as a matter of law, increase the risk, and that said section does not, therefore, apply (28 Ohio St., 69). In *Ins. Co.* v. *Williams,* 39 Ohio St., 584, a soliciting agent bound the company for false representations in an application, and by acts done by him in respect to the branch of the business entrusted to his care. Although knowledge of a subsisting mortgage was had by the soliciting agent, this was held not binding upon the company, and especially not if it were a mutual insurance company (*Stark* v. *Hurd,* 19 Ohio, 149). In *Aurora* v. *Hosmer,* 22 Bull., 292 (1889), a local agent was held authorized to waive a condition by knowledge, before and after the delivery of a policy, of the use of gasoline contrary to a provision in the policy, and it was held that the scope of his agency was a question of fact, and the same was properly submitted to the jury.

In *Ins. Co.* v. *Leslie,* 47 Ohio St., 413, the Supreme Court said the insured should be protected against unreasonable forfeitures and defenses, especially where such provisions are printed in small type on the back of policies and in terms which persons unlearned in law and in insurance would not readily understand. In three cases recently decided by our Supreme Court, it is said that a stipulation in the policy that no agent has authority to waive

or alter anything in the policy is both notice to and an agreement by the insured of that fact (*Travelers Ins. Co.* v. *Myers,* 62 Ohio St., 529). And the insured is bound by the limitation placed upon the agent's authority in the policy, and that he could not recover upon a verbal modification thereof by the agent in the absence of such knowledge and acts by the insurance company as would estop it from making such defense (*Union Central Ins. Co.* v. *Hook, supra;* *Eureka* v. *Baldwin,* 62 Ohio St., 368). These were cases of alleged waiver arising after the delivery of the policy.

It is the province of the courts to adjudicate the legal effect of human conduct. Parties themselves cannot conclusively determine what interpretation shall be given to their own acts. A principal ought not to be permitted to clothe his agent with certain indicia of authority to mislead others, and then to unfairly limit or restrict the force and effect of his acts to the prejudice of a prudent person who has reasonably acted upon the apparent scope of such authority.

It appears to me that the printed limitations upon the acts and conduct of the agent are also mere evidences reflecting upon the question of knowledge of the insured, and the ultimate fact of the actual and apparent scope of the agent's authority, and that the true test is, as is stated in a valuable treatise, *Huffcut on Agency,* section 103, to what extent, in fact, has the principal permitted the agent to hold himself out, and what would a prudent person, in good faith (which involves notice and knowledge of limitations), under the circumstances, reasonably believe such authority to be.

In the Myers case, 62 Ohio St., 541, our Supreme Court recognized the rule just stated by holding that the apparent scope of an agent's authority in that particular case did not justify the insured in relying upon the agent's advice, and enforced the stipulation in the policy against the insured; and in the Hook case, page 265, that there might be an estoppel by conduct on the part of the company, notwithstanding the printed agreement.

As the allegation in the amended reply is that that the waiver was made by an "authorized" agent, the sufficiency of the evidence to establish the fact of such authority is a question for the jury to determine, upon proper instructions from the court, and the nature, manner and extent of the printed stipulation and the notice or knowledge of the limitation of the agent's authority by the insured, the statements, acts and conduct of the agent and the company, and all the surrounding circumstances, are proper evidentiary facts to determine what was the actual or apparent scope of the agent's authority, and whether or not the company, by act or conduct, waived said provision or estopped itself from making such a defense. And, as stated before, this was the evident intent of the learned judges of our circuit court in remanding the case to the court below.

MUTUAL INSURANCE COMPANIES.

The general rule seems to be that a member of a mutual company, because he is alike insurer and insured, is bound by the by-laws, rules and regulations of the company. (*Stark* v. *Hurd, supra;* *Smith* v. *Farmers Ins Co., supra;* *Hale* v. *Mechanics,* 72 Mass., 169). But this rule applies only to those who are members, and a policy holder becomes such from the date of the consummation of the contract (*Eilenberger* v. *Protective Mutual,* 89 Pa. St., 469; *Leycoming Co.* v. *Woodworth* 83 Pa. St., 223). And, as seen in *Redstrake* v. *Cumberland, supra,* and *Hondeck* v. *Merchants, supra,* authority given to an agent may be binding upon the company although in violation of a by-law. As long as the act itself is not *ultra vires* (and even these acts have been enforced in Ohio) or against the powers granted in the charter, there should be no distinction in this respect between a mutual and a stock company. Especially is this true in this case, because consent to other insurance is admittedly within the powers of this corporation. The plaintiff also claims that this by-law was abrogated and abandoned, and that none exists. In the face of the two allegations: First, that the policy provided that the consent of the secretary only was necessary; and secondly, that the by-law provided that the consent of the board of directors was required, it may well be a question whether such by-law was not in fact abrogated or abandoned or waived; and this is a sufficient allegation to withstand the attack of a motion or demurrer.

The insurance law of 1857, providing for the consent by the directors or agent signified by the president and secretary, was repealed by the act of May 7, 1869, and the saving clause, excepting "all rights of action," does not include the method of consent, and this was left to the parties as a matter of contract.

The motion to strike out the second answer or allegation that the company never before refused to pay losses on the ground of double insurance, and is thereby estopped, is granted, as this is merely evidence tending to prove the abandonment or waiver of the by-law. If it is intended as an estoppel or waiver of the

consent of the company, the payment of losses not recoverable furnishes no ground of defense.

And the motion will be granted to strike out the fourth answer or allegation in the reply, namely, that the company, after knowledge of other insurance, caused bids to be taken for a reconstruction, and sent its agents for a settlement, making no claim for other insurance, but charging that plaintiff had set fire to his building, because no allegation of trouble, expense, loss or detriment to the plaintiff is alleged (*Georgia Home Ins. Co. v. Good,* 95 Va., 752; *Cleaver v. Ins. Co.,* 71 Mich., 414; *Webster v. Phoenix,* 36 Wis., 67). None of these acts, or all of them taken together, in their present from indicate any inconsistency with the insistence upon a forfeiture by reason of other insurance. They do not make a case of waiver, and some of the elements of estoppel are lacking (16 *Ency of Law,* p. 942). "To constitute a waiver of such a condition precedent it must be such as to justify the insured in the belief that an attempt on his part to perform would not be responded to by the insured" (*Ins. Co. v. Carnahan,* 63 Ohio St., 260).

So with the fifth allegation, that the defendant did not tender the premium until long after the bringing of the suit, the motion will be sustained because nothing appears in this allegation, standing alone, that the company had knowledge of the time when the other insurance was taken by plaintiff.

### THE REMEDY.

The most serious difficulty encountered by the court was to ascertain the remedy as applied to the pleaded facts. It is insisted, on the part of the plaintiff, that all of these acts amount to either waiver or estoppel *in pais,* and may be set up in an action at law; whereas opposite counsel asserts that the remedy is by reformation and must be alleged in the petition.

The court has been unable to find any case applicable to the one at bar, where this distinction is made. It is true that *Royal Ins. Co. v. Walrath,* 17 C. C., 509, decided by the learned judges of the fifth circuit, is cited in *Gwenther on Insurance* as establishing the principle that the reformation of an insurance contract was not necessary to establish an agreement between the agent and the insured prior to the issuance of the policy. The contention was that a certain quantity of hay in a neighboring barn was not covered by the policy. Certain hay was described in the policy, but so ambiguously as to make it uncertain whether the particular hay was included. The case, therefore, plainly fell within the well-known principle that where there is a palpable omission or ambiguity in a written contract, oral evidence may be offered to explain such omission, ambiguity or uncertainty; and this would not violate the rule of rejecting oral evidence to vary the terms of a written contract. The case was not one for reformation, and is, therefore, not applicable. Where the object and extent of the contract connot be definitely ascertained, parol evidence may be offered to explain the same (*Globe Ins. Co. v. Boyle,* 21 Ohio St., 128).

Estoppels *in pais* arose mainly in courts of equity, under the common law, but they have long since been applied in courts of law. In most of the cases waiver and estoppel were used as interchangeable terms, and in some cases it has been held that waiver is only another name for estoppel (16 *Ency. of Law,* 935). In others distinctions have been made. In *Ins. Co. v. Long,* 26 Southern Rep., 655 (Ala.) it was said that a waiver need not be founded upon an estoppel. In 60 Mo. Ap., 673, and 69 Mo. Ap., 272, the waiver need not be based upon any new agreement or estoppel. "A waiver depends solely upon the intention of the party against whom it is invoked, and in that respect it is essentially different from an estoppel" (*Stieffel v. German Ins. Co.,* 85 Mo. Ap., 2224).

"The distinction between waiver and estoppel, as applied to the law of insurance, is not in all respects clearly defined. An express waiver is in the nature of a new contract modifying, to some extent, the old one. It does not require a new consideration, unless it is by inducing a change of position, for the law of waiver seems to be 'a technical doctrine introduced and applied by the courts for the purpose of defeating forfeitures.' An estoppel forbids the assertion of the truth by one who has knowingly induced another to believe what is untrue and to act accordingly. While express waiver rests upon the intention, and estoppel upon misleading conduct, implied waiver may rest upon either, if it exists, when there is an intention to waive unexpressed, but clearly to be inferred from the circumstances; or, when there is no such intention in fact, but the conduct of the insurer has mislead the insured into acting on a reasonable belief that the company has waived some provision in the policy" (*Kiernan v. Deutcher Ins. Co.* 150 N. Y., 150). "A waiver need not be based upon a technical estoppel, yet in the absence of an express waiver some of the elements of an estoppel must exist" (*Gilson v. Liverpool,* 159 N. Y., 426).

An insurance company will not be permitted to defeat a recovery by proving the existence of facts which, by the terms of the policy,

would render it void, where, at the issuance of the policy, the company had full knowledge of such facts (16 *Ency. of Law*, 935, and many cases there cited ,including "other insurance" cases, as follows: *Fishback* v. *Phoenix*, 54 Cal., 422; *Niagara* v. *Johnson*, 4 Kan. App., 16; *Gandy* v. *Orient*, 52 S. C. 224; *American* v. *McCrea*, 8 Lea, Tenn., 513; *Mutual* v. *Ward*, 95 Va., 231). Or of facts which it ought to have known (*Knight* v. *Kalinski*, 163 U. S., 289).

The tendency of the decisions is plainly to hold all those conditions waived which, to the knowledge of the agent, would make the policy void as soon as delivered (*Menk* v. *Home Co.*, 76 Cal., 50).

In the following cases knowledge of the agent or the compnay *before* the issuing of the policy were held waivers: *Bennett* v. *Ins. Co.*, 70 Iowa, 600; *Hogan* v. *Ins. Co.*, 81 Ia., 321; *Hamilton* v. *Ins. Co.*, 94 Mo., 353; *Erb* v. *Ins. Co.*, 69 N. W., 261; *Gray* v. *Ins. Co.*, 84 Hun., 504; *Fitchner* v. *Association*, 72 N. W., 530; 44 Neb., 566, *May on Ins.*, section 372; *Elb* v. *Fidelity*, 99 Iowa, 727; 63 Fed., 689; *Joyce on Insurance*, section 472, p. 588; *Brownfield* v. *Union*, 87 Ky., 122; *Quenn* v. *Kline*, 32 S. W., 214 (Ky.); *Dayton Ins. Co.* v. *Kelly*, 24 Ohio St., 345.

In others such knowledge *after* the issuance of the policy was treated as waivers: *Schroeder* v. *Ins. Co.*, 28 Southeastern, 371; *Ins. Co.* v. *Molcvinsky*, 6 Tex. Ct. App., 81; *Ins. Co.*, v. *Gallatin*, 48 Wis., 36; *Kahn* v. *Ins. Co.*, 34 Pac., 1059; *Gand* v. *Ins. Co.*, 52 S. C. 228; *Georgia Home* v. *Good*, 95 Va., 752.

In some this knowledge before the issuance of the policy was held to be an estoppel; *Phoenix Ins. Co.* v. *Covey*, 41 Neb., 725; *Hartford Ins. Co.* v. *McLemore*, 7 Tex. App., 320; *Gandy* v. *Ins. Co.*, supra; *Kitchen* v. *Hartford*, 57 Mich., 135; *Niagara* v. *Johnson*, 4 Kan. App., 16; 85 Fed. Rep., 125; 95 Va., 231; *Union Mut.* v. *Wilkinson*, 13 Wall., 222; *Frankfuerter* v. *Home*, 110 Misc., N. Y., 159.

In others, that parol agreements were merged in the policy, and that the waiver can not be had without endorsement (*Union Mut.* v. *German*, 71 Fed., 473; 66 Tex., 232).

A waiver is an intentional relinquishment of a known and existing right. It must be subsequent to the written contract, with intent to waive, supported by a consideration or an estoppel (*United Firemen* v. *Thomas*, 27 C. C. A., 42, and cases cited by the reporter; *Morrison* v. *O'Niel*, 106 Ga., 472).

Although authorities may be found indicating that even a future intent to carry other insurance is a sufficient notice to the company (*Fireman* v. *Norwood*, 69 Fed., 71; *Brownfield* v. *Union*, 87 Ky., 122; *Mitchell* v. *Miss. Home*, 72 Miss., 53).

The decided weight of authority is the other way (*Ins. Co.* v. *Mowrey*, 96 U. S., etc; *Hartford* v. *Davenport*, 37 Mich., 609; *Ins.* v. *Wood*, 69 N. W., 94; 66 Tex., 232; *Germania* v. *Brow-*

nell, 62 Ark., 48; *Frankfuerter* v. *Home Ins. Co.*, 10 Misc., N. Y., 159; *United Firemen* v. *Thomas, supra; Eagle* v. *Globe*, 44 Neb., 380).

In *Fitchens* v. *Fidelity*, 103 Iowa, 280, which was an action for reformation, it was held that where the applicant was actually arranging for other insurance and had definitely fixed the amount, this was a fact, and not in the nature of an expression of a desire to procure insurance at some future date. And in *Ins. Co.* v. *Mowrey, supra*, it was held that the only case where the representation as to the future can operate as an estoppel is where it relates to the proposed abandonment of an existing right, or was intended to influence and did influence the conduct of the party to whom it is made. "It does not apply to contracts yet to be made. The doctrine carried to the extent for which the insured contends in this case would subvert the salutary rule that the written contract must prevail over previous verbal arrangements and open the door to all the evils which that rule was intended to prevent." This has been a leading case on this point, and was followed in *Crine* v. *Davis*, 68 Ga., 138; *Mauser* v. *Haughey*, 60 Ind., 368; *Stayton* v. *Graham*, 139 Pa. St., 1; *Shields* v. *Smith*, 37 Ark., 52, and in *Germania* v. *Browell*, 62 Ark., 48. In the last case it was held that estoppel cannot arise except when the representation relates to a matter of fact existing at the time. There cannot be a waiver of the forfeiture until the forfeiture exists. An agent cannot, by acts or declarations, waive stipulations in the policy not then in existence. Where by mistake or inadvertence, provisions other than those intended, were inserted or omitted, the parties could have recourse to a court of equity (*Orient Co.* v. *Prather*, 62 S. W., 90). It has been held that the introduction of evidence tending to prove a waiver by acts of the company or agent before the delivery of the policy, does not violate the rule of law that all parol statements are merged in the written contract (*Mitchell* v. *Miss. Home*, 72 Miss., 53).

The late decisions of great weight now hold that an insurance company may waive or agree not to enforce a forfeiture, but a parol agreement made at the time of the issuing of the policy, contradicting the terms thereof, is void and cannot be set up to contradict the writing (*Thompson* v. *Ins. Co.*, 104 U. S., 259, distinguishing the *Eggleston case*, 96 U. S., 572). In *McMaster* v. *N. Y. Life*, 99 Fed., 856, it was held that all prior oral statements by the agent, or made contemporaneously with the delivery of the policy, are merged in the written contract. The insured having full opportunity to read the policy, is estopped, in the absence of fraud or mutual mistake, from showing that its terms are other than those expressed in the writing (reviewing all the federal cases, *Union National Life* v. *German Ins. Co.*, 71 Fed., 473). So in *United Firemen* v. *Thomas*, 82 Fed., 406, it was held that knowledge by an

agent at the time of procuring the insurance, that the insured intended to take other insurance, does not operate as a waiver of that provision in the policy subsequently delivered, except by endorsement by the company. The rule that prior oral statements cannot control a subsequent written contract applies. A waiver, to be effectual, must be subsequent to the written contract made, not only with knowledge of other insurance, but with intent to waive and supported by a consideration, or become operative by way of estoppel. (See, also, *Fellows* v. *Madison*, 2 Disney, 128, 139; *Graham* v. *Firemen's Ins. Co.*, 2 Disney, 259).

It seems to me, therefore, that a policy holder is amply protected in a court of law in pleading a waiver or an estoppel based upon acts of conduct subsequent to the delivery of his policy ,permitting the introduction of oral evidence, and which would not violate the rule regarding the sanctity of written instruments, because it relates to matters of fact occurring subsequent to the making of the written agreement.

If, however, the insured seeks any relief from acts of the insurance company, or its agent, before the delivery of the policy, and attempts to prove, by prior statements and conduct, that the contract is different from the one actually signed (in the absence of a claim of fraud vitiating the same), his acceptance of the written contract under the circumstances should merit the usual punishment prohibiting the introduction of oral evidence to alter the terms of the policy, and the interests of all parties would be best subserved by relegating the insured to a court of equity to reform his contract and show, by the more stringent rules to be there applied, that his claim in equity is supported by clear convincing and satisfactory evidence, and that the signed policy is not the actual contract entered into between them. Oral agreements or statements made prior to or contemporaneous with the written policy to be available are, therefore, to be set up in an action to reform such instrument; and agreements, statements or acts subsequent to the delivery of the policy may be introduced to establish a waiver or estoppel in a court of law. As this may, under our code, be done in one action, no hardship should follow (*Metropolitan Ins. Co.* v. *Wood*, 33 Bull., 346).

The only other question remaining is, can this be set up by reply, or should the allegation be made in the petition? It is true our circuit court has intimated that it may be raised in the petition. In *Mehurin* v. *Stone*, 37 Ohio St., 58, it was so held; but this was an action on a building contract and involved conditions precedent.

Our Supreme Court has said that although a policy is only evidence of the contract and the latter may rest in parol when the same has not been written or is withheld (*Machine Co.* v. *Ins. Co.*, 50 Ohio St., 555), yet where a written policy was issued it must be made

the basis of the action, and not another and different parol version of it (*Union Cent. Co.* v. *Hook*, 62 Ohio St., 262).

In *Moody* v. *Ins. Co.*, 52 Ohio St., 12, it was held that conditions precedent, performance of which the plaintiff is required to plead in an action on such a policy, include only those affirmative acts which are necessary in order to prove his right of action on the policy, such as giving notice, making proofs of the loss, furnishing the certificate of the magistrate, when required by the policy, and, it may be, other acts of like nature. Conditions which provide that the policy shall become void, inoperative, or the insurer relieved wholly or partially from liability upon the doing of some act, are matters of defense, and, to be available, must be plead and their breach alleged (*Grand Rapids Ins. Co.* v. *Finn*, 60 Ohio St., 524; *Crawford* v. *Sutterfield*, 27 Ohio St., 424; 33 Ohio St., 561).

A waiver as to other insurance may be set up in the reply (*Phoenix Co.*, v. *Covey*, 41 Neb. 752).

If, then, conditions subsequent are matters of defense, they need not be proven in chief or alleged in the petition, especially as the plaintiff may not be advised which condition subsequent the insurance company claims was violated. When they are raised in defense, the plaintiff may reply, claiming either a waiver or estoppel at law, or he may combine in one proceeding both legal and equitable causes of action, one for reformation and the other for judgment, after the contract is reformed. I find nothing to militate against this in the recent case of *Cassily* v. *Cassily*, 57 Ohio St., 582.

An allegation in a petition at law, claiming that acts and conduct before or at the time of the delivery of the policy waived a forfeiture, should be stricken out. Testimony as to such prior acts and conduct may possibly be admissible as tending to prove the probability of subsequent acts. This is, however, a question of the relevancy of evidence for the trial court.

As the fourth item of the motion to the third allegation in the plaintiff's reply is too broad, in that it embodies the entire sentence, including the words "at and immediately after the delivery of the policy," it will be overruled.

So with the sixth item of said motion, to strike out the entire allegation.

It is possible that some clause in the third allegation of the reply is mere testimony. As the entire portion embodied in item three of the motion contains relevant and material matter, as does the other paragraph, indicating the prejudice resulting to plaintiff as a necessary element to an estoppel, embodied in item five of the motion, they will also be overruled.

Defendant's motion, as embodied under items two, seven and eight, is sustained, and as embodied in items one, three, four, five and six is overruled.

Leave to amend is given.

*Sayler & Sayler*, for motion.

*Goebel & Bettinger*, contra.